UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TAMMY MILLERLEILE,

        Petitioner,

   -vs-                                   Case No. 12-C-1084

DEANNE SCHAUB,
**Warden, Taycheedah Correctional Institution,**

        Respondent.

## DECISION AND ORDER

Tammy Millerleile was convicted of first-degree reckless homicide and sentenced to twenty years in prison. Millerleile's petition for habeas relief must be denied.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief if the petitioner files the document within one year of the final sentencing date, and the state court's decision was "contrary to, or involved an unreasonable application of federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1) and (2). A court's application of law is unreasonable when a legal rule is incorrectly applied to the particular facts of a case, a legal principle is extended to an inappropriate context, or a legal principle is not extended to an appropriate context. § 2254(d)(1); *Ellison v. Acevedo,* 593 F.2d 625,

632 (7th Cir. 2010). Additionally, any findings by a previous court are presumed to be correct in a federal habeas proceeding. § 2254(e).

The facts are as follows: The Wausau Police Department arrived at Millerleile's household to investigate a reported incident in which Jake Mentink, a fourteen month-old child, was hospitalized due to brain injuries. After arriving on the scene at approximately 8:30 a.m., detectives interviewed Tammy Millerleile and her husband in the home. Millerleile informed the detectives that Jake's injuries were due to a fall down the stairs while Millerleile was upstairs retrieving some clothing. She heard a thump and discovered Jake on the stairs, injured. Millerleile called her husband, and when he arrived home he took Jake to the Wausau Hospital Center. The detectives subsequently requested that Millerleile and her husband report to the station to provide oral statements, and both of them agreed. Detectives interviewed Millerleile for about an hour at the station, where she reiterated the events; then the detectives informed her she was free to leave. Millerleile did not leave, but instead waited in the "comfort room" of the police station while her husband provided his statement to detectives.

While Tammy Millerleile waited for her husband to finish giving his statement to the detectives, the detectives were informed that Jake Mentink had passed away in the hospital and the cause of death was consistent with Shaken Baby Syndrome and not a fall down the stairs. Upon receiving this information, the police grew suspicious and asked Millerleile for a second interview, to which she agreed. The detectives

- 2 -

Case 2:12-cv-01084-RTR   Filed 06/13/13   Page 2 of 9   Document 12

informed Millerleile that the baby had died and the cause of death was consistent with Shaken Baby Syndrome; Millerleile became distraught and cried for about five minutes. The detectives informed Millerleile that it was in her best interest to be honest regarding the incident, reasoning that the autopsy would reveal the cause of death anyway. Subsequently, Millerleile admitted to shaking Mentik. After she gave the confessional statement, the detectives read Millerleile her *Miranda* warning and placed her under arrest. Millerleile then explained the events leading up to the shaking of Mentik. She stated that Mentik had become fussy, so she shook him and dropped him on the ground from about a foot up to get him to stop. Millerleile then placed Jake on the bed, but he was unable to sit up, and then he fell down the stairs as initially indicated.

On March 11, 2002, Petitioner Tammy Millerleile was charged with First-Degree Reckless Homicide pursuant to Wis. Stats. §§ 940.02(1) and 939.50(3)(b). Millerleile was convicted of the offense and sentenced to twenty years in prison. She appealed the conviction on the grounds that she was not informed of her constitutional right to refrain from self-incrimination before she initially confessed during the second interview in the police department. *Miranda v. Arizona* requires that a person in custody must be read his or her constitutional rights. 384 U.S. 436, 461 (1966). "Custody" means that a reasonable person would believe they were not able to leave and is objectively based on the totality of circumstances. *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011). When analyzing the totality of the circumstances,

a court may look at factors such as "whether the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed." *Id.* at 327, quoting *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007).

Before trial, Millerleile filed a motion to suppress the confessional statements from the post-Miranda interview. The circuit court granted this motion. The court concluded that as soon as police informed Millerleile it would "be in her best interest to tell the truth," a custodial interrogation had taken place and a reading of her *Miranda* rights was required because it was a public understanding that a person accused of causing the death of a child would be arrested, jailed, and prosecuted. The court reasoned that when one is advised of his or her best interests, it is inferred that the person will be granted prosecutorial leniency if he or she cooperates. In this situation, the circuit court decided that since the detectives told Millerleile what was in her best interest, a reasonable person would infer that the interview had become custodial and that Millerleile would not be free to leave because she would face imminent prosecution.

The Wisconsin Court of Appeals reversed and remanded the Circuit Court's Order to suppress the Petitioner's statements, concluding that Millerleile was not in

- 4 -

custody when she gave her confessional statement to the Wausau detectives, and the Miranda warning was not necessary. The court explained that under the circumstances a reasonable person would not believe that he or she was in custody, as the court found that the detectives implied that no arrest would occur until they received the autopsy report. Additionally, the court took into account factors such as the interrogation time, lasting no longer than two hours at the police station, and the non-threatening tone the detectives used with Millerleile, which altogether did not suggest coercion or custody.

After the Wisconsin Supreme Court denied Millerleile's petition for review, Millerleile submitted a motion for a new trial on the primary theory that the reversal of the suppression motion was improper and a secondary theory that there was newly discovered evidence regarding Shaken Baby Syndrome. The motion for a new trial was denied on the grounds of issue preclusion regarding her custody during her confession as well as rejecting the assertion that there was newly discovered evidence regarding Shaken Baby Syndrome, stating the "new evidence" was merely cumulative.

The Court agrees that Millerleile was not in custody and hence the *Miranda* warning was not necessary. The allegation that Millerleile was in custody because of an inferred understanding of prosecutorial leniency does not clearly establish that the police department had custody over petitioner Millerleile. It is unclear whether a reasonable person would believe he or she was in custody based on an inference that

the person would be granted leniency if prosecuted. It is not sufficiently clear that "it is generally known that those causing the death of a child will be arrested, jailed and prosecuted" and there is no precedent to follow to determine whether a reasonable person would believe he or she is in custody upon hearing the phrase "it is in your best interest to tell the truth." In the present case, Tammy Millerleile voluntarily reported to the police station and agreed to participate in an interview. After being free to leave from the first interview, the police requested a follow-up interview upon discovering the death of the child. The police made no arrest, and did not conduct themselves in a way that suggested Millerleile was not free to leave, nor did they inform her that she was going to be charged with a crime or even was a suspect in the matter. There is no evidence that the detectives displayed any signs of force or weaponry, nor is there evidence that they raised their voices in a manner that was coercive, forceful, or threatening. The detectives simply informed Millerleile of possible incriminating evidence that the child's injuries were not consistent with the cause Millerleile stated to the detectives. A police interview of a possible suspect which may eventually lead to an arrest is not enough to convert an interview into a custodial interrogation. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Millerleile did not provide clear and convincing evidence that she was in police custody or was "deprived of h[er] freedom of action in any significant way" during her post-Miranda interview at the police station. *Miranda*, 384 U.S. at 444. Based on the situation, it is not reasonable that a person would believe he or she was in custody during this

interview, and there is a lack of precedent to support the trial court's position that a reasonable person would believe he or she is in custody based on an inference of prosecutorial leniency through a detective's advisement to tell the truth. As a result, the Court of Appeals' finding that Millerleile's confession is admissible was not an unreasonable application of any clearly established Federal law of the Supreme Court pursuant to 28 U.S.C. § 2254(d).

Millerleile also argues that her confession was involuntary. A conviction obtained by the use of an involuntary confession violates due process, but a confession is voluntary and admissible if "in the totality of circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Vallar*, 635 F.3d 271, 281 (7th Cir. 2011). Millerleile complains that the detectives told her that it was "in her best interest to be truthful," but this does not mean that her confession was involuntary. *See, e.g., United States v. Jackson*, 608 F.3d 100, 103 (1st Cir. 2010) (presence of "a lot of police officers" and a "suggestion that cooperation might induce leniency" does not amount to coercion); *compare United States v. Stadfeld*, 689 F.3d 705, 709 (7th Cir. 2012) (a false *promise* of lenience is "an example of forbidden [interrogation] tactics, for it would impede the suspect in making an informed choice as to whether he was better off confessing or clamming up").

- 7 -

Regarding her claim that the trial court should have granted her a new trial based on newly discovered scientific evidence, it does not appear that this issue was raised on appeal in state court, so it may be procedurally defaulted. In any event, evidentiary rulings by a state court are not subject to habeas review unless the ruling renders the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991). Given the strength of the evidence against Millerleile, particularly her confession, the refusal to grant a new trial on the grounds of newly-discovered evidence was harmless. *Id.*

Finally, after her petition was filed, Millerleile moved for an order preventing the respondent from interfering with her "legal mail" and from otherwise denying her "meaningful access to the courts." Essentially, Millerleile complains that prison officials have intercepted mail from her fiance marked "legal" that she purportedly needs for future proceedings in this case, but she does not (and cannot) argue that she has been denied meaningful access to the court system in light of the fact that she already filed her petition and supporting materials. *See generally, Snee v. Barone*, 359 F. App'x 281 (3d Cir. 2009) (denying habeas petitioner's motion for a preliminary injunction demanding the return of confiscated legal materials). To the extent that the alleged interception may interfere with future proceedings, Millerleile's motion is moot because the proceedings in this case are now at an end.

When the Court enters a final judgment against the petitioner, it must also issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2254

- 8 -

Case 2:12-cv-01084-RTR   Filed 06/13/13   Page 8 of 9   Document 12

Cases. Millerleile's petition does not evince a "substantial showing" that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, the Court will not issue a certificate of appealability.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Millerleile's motion for an order regarding the receipt of legal mail [ECF No. 10] is **DENIED**; and

2. Millerleile's petition is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of June, 2013.

                                          **BY THE COURT:**

                                          */s/ Rudolph T. Randa*
                                          **HON. RUDOLPH T. RANDA**
                                          **U.S. District Judge**

- 9 -

Case 2:12-cv-01084-RTR   Filed 06/13/13   Page 9 of 9   Document 12